| | |
|---|---|
| CARL J. BENNETT, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> Acting Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | **MEMORANDUM AND RECOMMENDATION** |

In this action, plaintiff Carl J. Bennett ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") on the grounds that he was not disabled. The case is before the court on the parties' motions for judgment on the pleadings (D.E. 27, 29). Both filed memoranda in support of their respective motions (D.E. 28, 30). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. 31). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

I.   **BACKGROUND**

   A.   **Case History**

Claimant filed an application for DIB on 28 June 2005, alleging onset of disability on 19 November 2004. *See* Transcript of Proceedings ("Tr.") 15, 105-07, 111. After denial by the Social Security Administration ("SSA"), plaintiff appealed to this court; on motion of the Commissioner, the court remanded the case; and the Appeals Council remanded the case to an

administrative law judge ("ALJ") for a hearing with instructions and ordered that the claims file on another application for DIB filed by plaintiff, on 29 April 2009, be associated with the claims file on the 28 June 2005 application. *See*, *e.g.*, J. (D.E. 36), *Bennett v. Astrue*, No. 5:10-CV-37-D (E.D.N.C. 2 Feb. 2011); Tr. 529-30 (Appeals Council remand order). On 16 January 2013, a hearing was held before an ALJ at which plaintiff and an impartial vocational expert testified. Tr. 469-525. The ALJ issued a decision denying plaintiff's associated claims on 4 March 2013. Tr. 456-67. Plaintiff timely requested review by the Appeals Council. Tr. 449-51. On 14 November 2013, the Appeals Council denied the request for review. *See* Tr. 446-48. At that time, the decision of the ALJ became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff commenced this proceeding for judicial review on 24 December 2013, pursuant to 42 U.S.C. § 405(g). (*See In Forma Pauperis* ("IFP") Motion (D.E. 1); Order Denying IFP Mot. (D.E. 4); Compl. (D.E. 5)).

    **B.**     **Standards for Disability**

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. § 423(d)(3).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R. § 404.1509], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["Listings"] . . . and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If

3

a medically severe combination of impairments is found, the combined impact of those impairments must be considered throughout the disability determination process. *Id.*

   C.   **Findings of the ALJ**

Plaintiff was 47 years old on the date last insured and 49 years old on the date of the hearing. *See* Tr., *e.g.*, 466 ¶ 7. He has at least a high school education and past relevant work as an electronics design engineer, systems programmer, and testing technician. Tr. 465 ¶ 6.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity from the alleged disability onset date of 19 November 2004 through 31 December 2010, the date last insured. Tr. 459 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: migraine headaches, lumbar spine bulging disc, obstructive sleep apnea, degenerative disc disease of the cervical spine, hypertension, obesity, bilateral knee pain/degenerative joint disease, and depression. Tr. 459 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or equals one of the Listings. Tr. 459 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform light work.[1] Tr. 460 ¶ 5. He found, however, that plaintiff was subject to additional limitations:

---

[1] Title 20 C.F.R. § 404.1567(b) defines "light work" as involving

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). The *Dictionary of Occupational Titles* ("DOT") defines "light work" as:

he could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and/or crawl, but could not climb ladders, ropes or scaffolds; he needed to avoid even moderate exposure to workplace hazards, such as dangerous moving machinery and unprotected heights; he required a work setting that did not involve production-pace/quota-based work, rather he required a goal-oriented job that would allow him to work at his own pace; he was capable of performing simple, routine, repetitive tasks ["SRRTs"].

Tr. 460-61 ¶ 5.

Based on his determination of claimant's RFC, the ALJ found at step four that plaintiff was unable to perform any of his past relevant work. Tr. 465 ¶ 6. At step five, the ALJ accepted the testimony of the vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of electronics worker, laundry worker, and cafeteria attendant. Tr. 466 ¶ 10. The ALJ accordingly concluded that plaintiff had not been under a disability at any time from 19 November 2004 through 31 December 2010. Tr. 467 ¶ 11.

D.  **Standard of Review**

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

---

Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

DOT app. C § IV, def. of "L-Light Work" (U.S. Dep't of Labor 4th ed. rev. 1991), http://www.oalj.dol.gov/libdot.htm (last visited 16 Dec. 2014). "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 404.1567.

Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## II.   OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff argues that the case should be remanded for the award of benefits or, in the alternative, a new hearing, on the principal grounds that the ALJ erred by: (1) failing to give

sufficient weight to a decision by the Veterans Administration ("VA") that plaintiff was unemployable ("VA's decision"); and (2) improperly assessing plaintiff's depression for the RFC determination. Each ground is examined in turn below.

## III. DISCUSSION

### A. Evaluation of the VA's Decision

Issued on 3 May 2006, the VA's decision held that plaintiff was entitled to individual unemployability benefits effective 15 January 2005. Tr. 137-39. The ALJ gave the VA's decision "limited weight." Tr. 464. Plaintiff alleges that the ALJ erred by not giving the VA's decision substantial weight, citing *Bird v. Comm'r of Soc. Sec.*, 699 F.3d 337, 343 (4th Cir. 2012). The court finds no error.

As the ALJ acknowledged, Social Security Ruling 06-03p, 2006 WL 2329939, at *6-7 (9 Aug. 2006) requires that an ALJ consider disability determinations regarding a claimant by other agencies. *See* Tr. 464 ¶ 5. In *Bird*, the Fourth Circuit ruled that "in making a disability determination the SSA must give substantial weight to a VA disability rating." *Bird,* 699 F.3d at 343. The court went on to qualify this principle:

> [B]ecause the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for a claimant's disability under the two programs likely will vary, an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate.

*Id.*

As to the difference in standards, the VA regulations provide that "all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled." 38 C.F.R. § 4.16(b). In contrast, the Social Security regulations provide that a claimant is disabled if he is unable "to do any substantial gainful

activity by reason of" any qualifying impairment. 20 C.F.R. § 404.1505(a). Thus, step five of the Social Security sequential analysis focuses on whether there are jobs available to the claimant in the national economy, not on whether the claimant can secure a job. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 1560(c)(2), 1566(a) (providing that work exists in the national economy under step five when it exists in significant numbers in either the region where the claimant lives or several other regions of the country, whether or not it exists in the immediate area in which the claimant lives, a specific job vacancy exists for the claimant, or the claimant would be hired if he applied for work); *Dean v. Astrue*, No. C08-5112RJB-KLS, 2008 WL 4585328, at *5-8 (W.D. Wash. 14 Oct. 2008) (reviewing the above-noted and other differences between Social Security and VA disability standards).

Here, the ALJ explained his attribution of limited weight to the VA's decision on precisely the ground that the VA disability standards are different from the Social Security standards. He stated:

> The undersigned has considered the disability rating decision made by the [VA], but grants it limited weight since the VA generally uses a different standard than [SSA's] disability standard (Exhibit 5E). . . . The VA ratings decision was clearly based primarily upon the claimant's headaches, as well as his back condition; nevertheless, it specifically references the multiple days he reportedly missed while working for Sprint associated with his migraine headaches. While this information can [be] helpful, the undersigned is bound to consider the totality of the evidence of record. As discussed herein, the undersigned is not persuaded the claimant meets the definition of disability; in fact, the weight of the evidence, as discussed herein, shows otherwise.

Tr. 464 ¶ 5.[2]

---

[2] Although not cited by the ALJ as a separate basis for discounting the VA's decision, the period covered by the ALJ's decision, 19 November 2004 through 31 December 2010, is different from that covered by the VA's decision, which was effective 15 January 2005, as the *Bird* decision envisioned. Moreover, as a consequence, there was significant medical evidence before the ALJ that was not before the VA.

Review of the VA's decision substantiates the ALJ's analysis. It focuses on plaintiff's work history at Sprint, the role of his migraine and back impairments in it, and plaintiff's ability to obtain and keep other employment. The VA's decision states:

> A review of the Family & Medical Leave Statement from Sprint, dated September 24, 2003, shows that you previously missed multiple days of work due to impairment associated with your service-connected migraine headaches. On-going treatment for this disability, as well as other service-connected conditions, is shown within the treatment reports from the VAMC Fayetteville. At the time of your VA Neurological Examination, conducted on March 3, 2005, you reported that you were not working; and could not work when you had a headache. The VA "Spine" examination, conducted on March 3, 2005, also demonstrated that you suffered from periods of incapacitation due to your service-connected thoracolumbar spine condition. Within your Application for Increased Compensation Based on Unemployability, received on April 27, 2005, you stated that you have 4 years of college education; and last worked in November 2004 as an Access Provisioner for Sprint. . . . Employment information from this facility shows that you were no longer employed with Sprint as of January 14, 2005. Specific information as to the reason for your termination is not provided within this employment form. However, based on the overall evidence of record it is determined that you are unable to obtain and maintain gainful employment due to your service-connected disabilities.

Tr. 138-39. Consistent with his statement that he gave the VA's decision limited weight, the ALJ found that plaintiff could not perform his past relevant work. Tr. 465 ¶ 6.

The determination by the ALJ that the weight of the evidence fails to show that plaintiff is disabled under Social Security standards is supported by substantial evidence. As the ALJ stated:

> [T]he claimant's main issue concerns his headaches, which he avers happen 2 to 3 times per week, and are incapacitating. However, [VA] treatment records, especially the more recent records, call into question the vagueness and inconsistency of the claimant's headache complaints. For instance, in March 2012, the claimant's treating source noted that he kept changing the characteristics of his headaches and spells a little at each visit (Exhibits 6F/2, 19). . . . In addition, the record reveals no objective evidence for the etiology of the claimant's migraine headaches. For example, the MRI of the claimant's brain was normal (Exhibit 7F).

Tr. 462 ¶ 5.

The ALJ also discussed medical records substantiating that, when plaintiff was compliant with his medication, it showed effectiveness in controlling his migraines:

> The claimant told Dr. Chipman, a neurologist, he was having at least three "incapacitating" headaches a week, which were accompanied by nausea, photophobia and sonophobia. Dr. Chipman recounted how the claimant had been taking nasal Sumatriptan at least for a couple of years, as well as Topamax. He noted the claimant's report of some benefit from the Sumatripan, *but also noted the claimant often did not take it until the onset of a headache, which he believed was the reason it did not work*. He also remarked how the claimant had been taking a large dose of it too. Ultimately, Dr. Chipman diagnosed migraine headaches, *probably with analgesia overuse due to persistent overuse of Sumatriptan*. He discontinued Topamax and prescribed Depakote. In a neurology follow up from March 24, 2009, *the claimant reported the Depakote had blunted many of his headaches and even shortened their duration to a day or even less than a day* (Exhibit 11F/26). *He described them as milder*, noting he used the Sumatriptan "very sparingly." His doctor noted that "*[a]ll in all he feels that current therapy is helping him.*" *His neurologic exam on this date was negative*, though his dose of Depakote was still increased to 1000 mg b.i.d, which the claimant was unable to tolerate (page 21). In a report dated July 27, 2009, *the claimant said he was under a great deal of stress, though he did not elaborate, which he believed might have increased the frequency of his headaches*. A VA Neuro clinic report from January 4, 2013 notes *the claimant reported headaches less than 5 times per month* (Exhibit 7F/5). *Dr. Zaidi mentioned the claimant's migraines were getting less intense and less frequent, which indicates they have responded to treatment, even though his medications have been adjusted throughout the years*. He also mentioned the claimant's narcolepsy/cataplexy-type episodes, which the claimant has associated with his migraines. *The claimant reported Imitrex helped alleviate his migraine symptoms* (Exhibit 7F/5).

Tr. 462 ¶ 5 (emphasis added).

With respect to plaintiff's back impairment, the ALJ discussed treatment records substantiating that it was not disabling:

> Objectively, the claimant does have degenerative disc disease of the cervical and lumbar spine, but no evidence to support radiculopathy. His doctor refused to give him a handicapped sticker some years ago, noting the claimant's back only intermittently bothered him to such a degree.
> . . . .
> His physical examinations routinely have revealed unremarkable findings, such as normal strength, normal gait and normal reflexes (Exhibits 5F, 6F, 9F and 11F).

Tr. 462-63 ¶ 5.

The ALJ also discussed a consultative examination performed on plaintiff in July 2009 further substantiating that plaintiff's back impairment was not disabling:

> [T]he claimant complained of low back pain and knee pain. Dr. Cohen noted that a May 2007 MRI had shown a small disc bulge at L3 with no disk protrusions or significant spinal stenosis at any level. . . . Aside from limited range of motion in his thoracolumbar spine, his range of motion was full. His spine was normal without deformity or tenderness. Despite a mildly positive supine straight leg raise test, his sitting straight leg raise test was negative. . . . Dr. Cohen diagnosed the claimant with chronic lumbosacral st[r]ain . . . . He opined that the claimant's abilities to move about and carry were mildly impaired, and his ability to lift was moderately impaired (Exhibit 9F).

Tr. 462-63 ¶ 5.

The assessments of the nonexamining state agency consulting physicians provide further support for the ALJ's determination that plaintiff's migraine and back impairments were not disabling. One found plaintiff limited to light work with postural limitations due to his migraine and back impairments (Tr. 160, 161, 166), and another also found him limited to light work with postural limitations but tied those limitations to plaintiff's back and knee impairments (Tr. 168, 169). *See* Tr. 463-64 ¶ 5. The ALJ gave these assessments great weight. Tr. 463-64. The two other assessments (Tr. 878, 879, 1040, 1041, 1043, 1046) found plaintiff capable of medium work, one with limitations,[3] to which the ALJ gave only limited weight. Tr. 464 ¶ 5.

The court concludes that the ALJ's assessment of the VA's decision is supported by substantial evidence and based on proper legal standards. The court accordingly rejects plaintiff's challenge to it.

### B. Assessment of Plaintiff's Depression

Plaintiff contends that the ALJ erred by purportedly failing to perform a function-by-function analysis with respect to plaintiff's depression and including in his RFC determination

---

[3] The ALJ stated that one of these physicians, Jack N. Drummond, M.D., imposed the limitation of frequent postural activities, but he did not. *See* Tr. 878, 879.

11

Case 5:13-cv-00871-D   Document 32   Filed 12/16/14   Page 11 of 14

only the restriction of plaintiff to SRRTs to accommodate his depression. Plaintiff's contention has no merit.

In assessing a claimant's RFC, Social Security Ruling 96-8p, 1996 WL 374184 (2 July 1996) requires the ALJ to perform a function-by-function analysis. The ruling states that the "RFC assessment must . . . assess [the individual's] work-related abilities on a function-by-function basis." *Id.*, 1996 WL 374184, at *1. However, contrary to plaintiff's apparent view, the ALJ is not required to set out the function-by-function analysis in his decision. On this point, this court has noted:

> Although the Fourth Circuit does not appear to have addressed this question, courts within our circuit have held that "SSR 96-8p does not require an ALJ to produce a detailed statement in writing—a true 'function-by-function' analysis," and that "a narrative discussion of a claimant's symptoms and medical source opinions is sufficient" *Mills v. Astrue*, 2:11-CV-65, 2012 WL 2030093, at *16 (N.D. W. Va. Apr. 9, 2012) (citing *Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009)). *See also Anderson v. Astrue*, 3:10-CV-583, 2011 WL 3585390, at *5 (E.D. Va. July 28, 2011) ("SSR 96-8p requires that an ALJ's RFC determination must address the exertional limitations, but written articulation of such limitations is not required . . . .").

*Mascio v. Colvin*, No. 2:11-CV-65-FL, 2013 WL 3321577, at *3 (E.D.N.C. 1 July 2013); *see also Floyd v. Astrue*, Civ. No. 3:10CV474-FDW-DSC, 2011 WL 4946311, at *2-3 (6 June 2011) (finding that the ALJ complied with function-by-function analysis requirement of Soc. Sec. R. 96-8p although he did not discuss every function associated with work-related activities, citing precedent from the 7th, 8th, and 9th Circuits), *rep. & recomm'n adopted by* 2011 WL 4946270 (W.D.N.C. 18 Oct. 2011).

The ALJ's decision substantiates that he did perform a function-by-function analysis with respect to plaintiff's depression. Contrary to plaintiff's contention, the limitation to SRRTs was not the only mental limitation in the RFC determination. Rather, the ALJ also found that "he

required a work setting that did not involve production-pace/quota-based work, rather he required a goal-oriented job that would allow him to work at his own pace." Tr. 460-61.

In reaching this determination, the ALJ explained that he gave only limited weight to the 25 January 2010 opinion of the nonexamining state agency psychologist, Lori Brandon Souther, Ph.D., that plaintiff's depression, for which he was prescribed an antidepressant, was non-severe and that it resulted in only mild, not moderate, difficulties in concentration, persistence, or pace. Tr. 464 ¶ 5; *see also* Tr. 1025, 1028, 1037 (relevant portions of Dr. Souther's completed psychiatric review technique form). The ALJ explained:

> Although Dr. Souther's assessment is arguably consistent with the evidence before her, the undersigned has considered the claimant's testimony in deeming the claimant's depression severe, especially when considered in the context of his other severe impairments. Even still, the record does not support greater than moderate restriction of his ability to maintain concentration, persistence or pace as a result of his depression.

Tr. 464 ¶ 5.

The ALJ's determination that although plaintiff's depression merited limitation of his RFC it was not disabling finds further support in evidence cited by the ALJ that plaintiff did not consistently use medication for his depression:

> A VA report dated December 4, 2012 noted the claimant had been prescribed Celexa, but notes he had not gotten the medication as prescribed on a monthly basis, despite his complaints of insomnia, lethargy, amotivation, anhedonia, feelings of guilt, low self-esteem, crying spells, concentration problems, short term memory loss, irritability, and increase in appetite (Exhibit 7F/16).

Tr. 463 ¶ 5; *see* 20 C.F.R. § 404.1530 (requiring claimants to follow prescribed treatment). For this and the other reasons discussed, the court rejects plaintiff's challenge to the ALJ's assessment of plaintiff's depression.

## IV. CONCLUSION

After careful consideration of the ALJ's decision and the record in this case, the court concludes that the decision is supported by substantial evidence of record and based on proper legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion (D.E. 29) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 27) for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 30 December 2014 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after filing of the objections on the responding party.

This, the 16th day of December 2014.

James E. Gates
United States Magistrate Judge